IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BOBBIE L. WASHINGTON, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-1768-G (BH) |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

# FINDINGS, CONCLUSIONS, AND RECOMMENDATION
# OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to *Special Order No. 3-251*, this case was automatically referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation for disposition. Before the Court are *Plaintiff's Motion for Summary Judgment*, filed May 5, 2008; *Defendant's Motion for Summary Judgment*, filed July 7, 2008; and *Plaintiff's Reply Brief*, filed August 27, 2008. Having reviewed the evidence of the parties in connection with the pleadings, the Court recommends that *Plaintiff's Motion for Summary Judgment* be **GRANTED,** *Defendant's Motion for Summary Judgment* be **DENIED**, and the case be remanded to the Commissioner for further proceedings.

## I. BACKGROUND[1]

**A.** **Procedural History**

Bobbie L. Washington ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claim for benefits under Title II

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

and Title XVI of the Social Security Act. On September 1, 2005, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act. (Tr. at 15, 66-68). She filed an application for supplemental security income under Title XVI of the Social Security Act on the same day. (Tr. at 15). Plaintiff claimed she had been disabled since September 1, 2005, due to high blood pressure, high cholesterol, diabetes, blurred vision, and problems with her knees and back. (Tr. at 72). Plaintiff's application was denied initially and upon reconsideration. (Tr. at 37-40, 49, 55). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 36). A hearing, at which Plaintiff personally appeared and testified, was held on January 3, 2007. (Tr. at 295-322). On February 12, 2007, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 12-24). The Appeals Council denied Plaintiff's request for review, concluding that the contentions raised in Plaintiff's request for review did not provide a basis for changing the ALJ's decision. (Tr. at 4-7). Thus, the ALJ's decision became the final decision of the Commissioner. (Tr. at 4). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g) on October 19, 2007.

**B.     Factual History**

    **1.     Age, Education, and Work Experience**

Plaintiff was born in 1949. (Tr. at 66). At the time of the hearing before the ALJ, she was 57 years old and had a seventh grade education. (Tr. at 298-99). Her past relevant work experience included work as a truck detailer, mail sorter, cafeteria worker, office cleaner, and construction worker. (Tr. at 299-300, 318-19). Plaintiff last worked in 2005. (Tr. at 301).

    **2.     Medical Evidence**

The administrative record in this case contains a great deal of medical evidence pertaining

to Plaintiff's physical and mental limitations. The medical evidence in this case, however, is not relevant because the dispositive issue in this appeal is procedural rather than evidentiary. A recitation of the medical evidence is therefore unnecessary.

### 3. Hearing Testimony

A hearing was held before the ALJ on January 3, 2007. (Tr. at 295). Plaintiff appeared personally and was represented by an attorney. *Id*.

#### *a. Plaintiff's Testimony*

Plaintiff testified that she was 57 years old, was 5'8" tall, and weighed approximately 180 pounds. (Tr. at 298). She was divorced, lived alone in an apartment, and had not driven in months because she no longer had a car and her right hip hurt when she attempted to drive. (Tr. at 298-99). She testified that she had a seventh grade education, did not complete any vocational courses, and could read "some." (Tr. at 299). She further testified that she detailed trucks for nine months in 2005 and that she previously worked as a server in a cafeteria and part-time as a mail sorter for the post office. (Tr. at 299-300). She last worked in 2005. (Tr. at 301).

Plaintiff testified that she was unable to work due to swollen knees and a back that "locks." (Tr. at 302). She also had problems with her vision, shoulders, high cholesterol, and high blood pressure. (Tr. at 302-03). She testified that she got depressed because she was unable to do the things she used to do. (Tr. at 304). She did not have any friends and being around crowds and noise bothered her. (Tr. at 305). She watched television but was unable to read a newspaper. (Tr. at 306).

Under examination by her attorney, Plaintiff summarized her past work as a part-time office cleaner, cafeteria worker, and construction worker. (Tr. at 306-09). She estimated that she could stand in one place for approximately 30 minutes before she would need to sit. (Tr. at 310). She

heavily relied on her daughter and testified that she could not clean the house but could do laundry. (Tr. at 311). She did not believe she could work a full eight-hour day. (Tr. at 314).

### b. *Medical Expert Testimony*

A medical expert ("ME") testified at Plaintiff's hearing. The ME summarized Plaintiff's medical evidence and opined that she would be able to perform work at the light level with occasional postural activities. (Tr. at 315-16).

### c. *Vocational Expert Testimony*

A vocational expert ("VE") also testified at Plaintiff's hearing. The VE asked Plaintiff to clarify her work as a mail sorter. The transcript reads as follows:

> VE: I don't have a clear understanding of casual help for the post office.
>
> ALJ: Could you tell us what you did there?
>
> Pl.: You be sitting in a chair, and you – they got like blocks where you put the mail in slots.
>
> ALJ: Okay.
>
> VE: Basically, you're sorting mail?
>
> Pl.: Um-hum.
>
> VE: Okay. And you were sitting down all day? Did you have to lift any weight?
>
> Pl.: No. It's a basket they push up to you. You just get it out and put it in the slots.
>
> VE: Okay. Okay, Your Honor. That job is classified as a mail sorter, it's light, SVP of 2, but she's indicated it was performed at sedentary. DOT [Dictionary of Occupational Titles] code is 209.687-026.

(Tr. at 318). The VE also classified Plaintiff's work as a cafeteria counter attendant (light, SVP 3, DOT #311.677-014), office cleaner (light, SVP 2, DOT #323.687-014), and construction worker

(heavy, SVP 2, DOT #381.687-014). (Tr. at 318-19).

The ALJ asked the VE to assume a hypothetical person who could perform light work lifting 20 pounds occasionally and 10 pounds frequently; standing and walking a total of 6 hours in an 8-hour work day or sitting 6 hours in an 8-hour work day; no climbing of ladders or scaffolds, no balancing, no crawling; and having the ability to understand, carry out, and remember short and simple instructions. (Tr. at 319). Based on this residual functional capacity ("RFC"), the VE testified that such a person would be able to perform Plaintiff's past relevant work as an office cleaner or mail sorter "both as she described it and as is classified." *Id*. The ALJ adjusted the hypothetical to a less than full range of light work with the same non-exertional restrictions and the ability to understand, carry out, and remember short and simple instructions. (Tr. at 320). The VE testified that the hypothetical person would be able to perform her past relevant work as a mail sorter "as she described." *Id*. The VE testified that there was no conflict between her testimony and the information provided in the DOT. *Id*.

## C. ALJ's Findings

The ALJ denied Plaintiff's application for benefits by written opinion issued on February 12, 2007. (Tr. at 12-24). The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2008, and that she had not engaged in substantial gainful activity since the alleged onset of disability, August 1, 2003. (Tr. at 17, ¶¶1, 2). In addition, he found that Plaintiff had the severe impairments of obesity, hypertension, osteoarthritis, hip bursitis, diabetes, depression, anxiety, and somatization disorder. (Tr. at 17, ¶3). However, the ALJ concluded that Plaintiff's impairments did not meet or equal a listed impairment as of that date. (Tr. at 19, ¶4).

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to lift 20 pounds occasionally and 10 pounds frequently; frequently sit and occasionally stand and walk; avoid climbing, ladders, scaffolds, and crawling; occasionally stoop, bend, squat, kneel, and crouch; and understand, carry out, and remember short and simple instructions. (Tr. at 21, ¶5). The ALJ noted that Plaintiff's "mental impairments do not significantly erode her residual functional capacity; she would be capable of jobs requiring simple, one to two step instructions." (Tr. at 22). He further noted that "[h]er recent work experience correlates to an ability to understand, carry out and remember simple tasks and instructions. I find that on the record before me, the claimant maintains this level of functioning and that this conclusion is supported by the record in this case." (Tr. at 23). Based on this RFC, the ALJ found that Plaintiff could perform her past relevant work as a mail sorter. (Tr. at 23, ¶6). The ALJ imposed an additional restriction of a reduced light RFC with an ability to stand and walk for up to 2 hours a day and lift up to 20 pounds. (Tr. at 24). The ALJ also noted that Plaintiff could perform the work as it is actually and generally performed. *Id*. Since Plaintiff could perform her past relevant work, the ALJ concluded that she was not under a disability, as defined in the Social Security Act, from her alleged onset date through the date of his decision. (Tr. at 24, ¶7).

## II. ANALYSIS

A. **Legal Standards**

   1. **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236

(5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id*. Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id*.

### 2. Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis.

*Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.     Issues for Review**

Plaintiff presents the following issues for review:

(1)     The substantial evidence does not support the determination the Plaintiff can perform her past job as a mail sorter; and

(2)     The ALJ erred in failing to develop the record by recontacting Dr. Mount.

(Pl. Br. at 1).

**C.     Issue One: Past Relevant Work**

Plaintiff's first issue for review is that substantial evidence does not support the finding that she could perform her past relevant work as a mail sorter. Specifically, she contends that her mental RFC, as determined by the ALJ, does not correspond to the reasoning level of a mail clerk as defined in the DOT. (Pl. Br. at 6-8).

To establish that work exists for a claimant at steps 4 and 5 of the sequential disability determination process, the ALJ relies on the medical-vocational guidelines or the testimony of a VE in response to a hypothetical question. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). A hypothetical question posed by an ALJ to a VE must reasonably incorporate all the claimant's disabilities recognized by the ALJ and the claimant must be afforded a fair opportunity to correct any deficiencies in the hypothetical question. *Id*. at 436. A claimant's failure to point out deficiencies in a hypothetical question does not "automatically salvage that hypothetical as a proper basis for a determination of non-disability." *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001).

In this case, the ALJ determined that Plaintiff retained the mental RFC to understand, carry out, and remember short and simple instructions. (Tr. at 21, ¶5). He further noted that Plaintiff would be capable of jobs requiring simple, one to two step instructions. (Tr. at 22). On the DOT's

scale of general educational development, the ALJ's mental RFC finding most closely corresponds to a reasoning development of level 1, which requires someone to "apply commonsense understanding to carry out simple one- or two-step instructions" and "deal with standardized situations with occasional or no variables in or from these situations encountered on the job." Dept. of Labor, Dictionary of Occupational Titles, Appendix C.III (4th ed. 1991), *available at* 1991 WL 688702.[2] The ALJ found that Plaintiff could return to her past work as a mail sorter. (Tr. at 23, ¶6). A mail sorter as defined by the DOT, however, has a reasoning of level 3, which requires a person to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "deal with problems involving several concrete variables in or from standardized situations." DOT #209.687-026, *available at* 1991 WL 671813. In other words, the ALJ found that Plaintiff could return to her past work at a reasoning level above her current mental RFC. By identifying the ALJ's mental RFC determination and the reasoning level requirement of her previous work as defined by the DOT, Plaintiff met her burden at step 4 to show that she was incapable of returning to her past work as a mail sorter. *Leggett*, 67 F.3d at 564. Given the inability of someone to perform work at a level above their RFC, she also identified a lack of substantial evidence to support the ALJ's step 4 determination. *Greenspan*, 38 F.3d at 236.

Defendant raises two arguments that the ALJ did not err at step 4. (Def. Br. at 4-5). He first contends that the ALJ properly relied upon the testimony of the VE, but the VE's testimony is flawed because it does not address the mental requirements of work as a mail sorter. The VE only questioned Plaintiff about the physical demands of her past work as a mail sorter; she did not inquire

---

[2] Level 2 requires someone to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "deal with problems involving a few concrete variables in or from standardized situations.

about the reasoning level. (*See* Tr. at 318). The VE's testimony that Plaintiff could perform her mail sorting work "as described" is therefore not supported by Plaintiff's testimony because she said nothing about the reasoning level. (*See* Tr. at 319-320). Likewise, the VE's testimony that Plaintiff could perform her mail sorting work "as classified" is not supported because the DOT classifies the reasoning level of a mail sorter at level 3.

Defendant's second argument is that neither the VE nor the ALJ relied on the "one to two step instruction" language, but instead found that Plaintiff could perform "simple tasks and instructions" or "short and simple instructions." According to Defendant, the VE never heard the "one to two step" language at the administrative hearing. While this correctly reflects the transcript of the administrative hearing, it does not account for the similarity of the ALJ's chosen language to the DOT's definition of level 1 reasoning. *See* DOT, Appendix C.III, *available at* 1991 WL 688702.

Defendant relies on *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000), for the proposition that the ALJ may rely upon VE testimony that conflicts with the DOT provided that the record reflects an adequate basis for doing so. In *Carey*, the plaintiff alleged an inferred conflict with the VE testimony on jobs involving manual dexterity because the plaintiff could only use one arm and hand. *Carey*, 230 F.3d at 145. The VE provided specific testimony regarding jobs that the plaintiff could perform with only one arm and hand but did not explain why those jobs could be performed. *Id.* at 146. The Fifth Circuit rejected the plaintiff's narrow reading because there was no "direct and obvious conflict" between the VE's testimony and the DOT, nor was there a "less obvious conflict or discrepancy." *Id.* at 145-46. The Fifth Circuit further found that any potential inferred conflict was "greatly mitigated" by the VE's specific testimony. *Id.* at 146. Defendant's reliance on *Carey* is therefore misplaced because in this case there is, at the very least, a "less obvious conflict or

discrepancy" between the ALJ's chosen language and the DOT's definition of level 1 reasoning. Moreover, unlike in *Carey*, the VE did not provide mitigating specific testimony about the reasoning level of a mail sorter. (*See* Tr. at 318-20). Nor did the VE or ALJ did not explore any differences between the reasoning levels of the subsets of the DOT job classification of mail clerk (*i.e.*, mailroom clerk, mail sorter, postal clerk). Thus, upon closer examination, *Carey* actually supports Plaintiff's position since the instant case involves a "less obvious conflict or discrepancy" between the VE's testimony and the DOT.

Finally, two additional points warrant mentioning. Defendant posits that Plaintiff's past work "arguably falls into the category of 'jobs requiring simple, one to two step instructions'" because she simply sorted mail. (Def. Br. at 5). While sorting mail may seem to be a simple task, it is the VE's responsibility to determine the reasoning level of Plaintiff's past relevant work as a mail sorter as she performed it. Second, although the ALJ asked about potential conflicts between the VE's testimony and the DOT in accordance with Social Security Ruling 00-4p (Tr. at 320), the VE's response in the negative was erroneous due to the discrepancy between the hypothetical person's reasoning level and that of a mail sorter as defined in the DOT.

For the reasons discussed above, the Court finds a lack of substantial evidence to support the ALJ's step 4 finding that Plaintiff can return to her previous work as a mail sorter. *Leggett*, 67 F.3d at 564. Since remand is required on this issue, the Court does not consider Plaintiff's second issue for review.

### III.  RECOMMENDATION

For the foregoing reasons, the Court recommends that Plaintiff's *Motion for Summary Judgment* be **GRANTED**, *Defendant's Motion for Summary Judgment* be **DENIED**, and the

decision of the Commissioner be **REVERSED** and the case be **REMANDED** for reconsideration consistent with this opinion.

**SO RECOMMENDED** on this 1st day of November, 2008.

	IRMA CARRILLO RAMIREZ
	UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

	Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

	IRMA CARRILLO RAMIREZ
	UNITED STATES MAGISTRATE JUDGE